**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION**

| | |
|---|---|
| WALTER LEE WEBB,<br><br>Plaintiffs,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC., COLLECTION MANAGEMENT COMPANY d/b/a CREDIT MANAGEMENT COMPANY,<br><br>Defendants. | Case No.: 5:26-cv-508<br><br>**COMPLAINT**<br>**JURY TRIAL DEMANDED** |

## <u>COMPLAINT</u>

Walter Lee Webb ("Plaintiff"), by and through the undersigned counsel, brings this action on an individual basis, against Experian Information Solutions, Inc. ("Experian"); and Collection Management Company d/b/a Credit Management Company ("CMC"); (all defendants collectively, "Defendants"), for actual, statutory, and punitive damages and costs, and attorney's fees, for violations of the federal Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq*. ("FCRA"), and the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq*. ("FDCPA") and states as follows:

# INTRODUCTION

1.      The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual American consumers. Data technology, whether it is used by businesses, banks, the Internal Revenue Service or other institutions, allows information concerning individual consumers to flow instantaneously to requesting parties. Such timely information is intended to lead to faster and better decision-making by its recipients and, in theory, all of society should ultimately benefit from the resulting convenience and efficiency.

2.      However, unfortunately this information has also become readily available for, and subject to, mishandling and misuse. Individual consumers can and do sustain substantial damage, both economically and emotionally, whenever inaccurate or fraudulent information is disseminated and/or obtained about them. In fact, the Credit Bureau Defendants acknowledge this potential for misuse and resulting damage every time they sell their respective credit monitoring services to a consumer.

3.      The ongoing technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning individuals' credit histories and other personal information. Such companies are commonly known as consumer reporting agencies ("CRAs").

4.      These CRAs sell information to readily paying subscribers (i.e., retailers, landlords, lenders, potential employers, and other similar interested parties), commonly called "consumer reports," concerning individuals who may be applying for retail credit, housing, employment, or a car or mortgage loan.

5.      Since 1970, when Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), federal law has required CRAs to implement and utilize reasonable procedures "to assure maximum possible accuracy" of the personal, private, and financial information that they compile and sell about individual consumers.

6.      One of the primary purposes in requiring CRAs to assure "maximum possible accuracy" of consumer information is to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

See 15 U.S.C. § 1681(a)(1).

7.      The preservation of one's good name and reputation is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him

*Webb, Walter Lee v. Experian Information Solutions, Inc. et al*
Complaint

unemployable or uninsurable, as well as deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed.

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 cong. Rec. 36570 (1970)] (emphasis added).

8.     The FCRA also requires CRAs to conduct a reasonable reinvestigation to determine whether information disputed by consumers is inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which the CRA receives the notice of dispute from the consumer. This mandate exists to ensure that consumer disputes are handled in a timely manner and that inaccurate information contained within a consumer's credit report is corrected and/or deleted so as to not prevent said consumer from benefiting from his or her credit and obtaining new credit.

9.     In light of these important findings and purposes, Congress specifically noted "a need to insure that [CRAs] exercise their grave responsibilities with fairness, impartiality, and respect for the consumer's right to privacy." *See* 15 U. S.C. § 1681(a)(4).

10.     The FCRA also requires furnishers of information, a creditor or other third party that provides information about consumer to a CRA, upon notice, to conduct a reasonable reinvestigation of all disputes with regard to the completeness

or accuracy of any information it provides to the CRAs regarding a consumer and modify, delete, or permanently block any items of information found to be inaccurate, incomplete, or unverifiable after said reinvestigation is completed.

11. Plaintiff's claims arise out of Defendants' blatantly inaccurate credit reporting, wherein Defendant Experian inaccurately reported collection account despite Plaintiff's settlement payment of the same, and failure to perform a reasonable reinvestigation upon receipt of Plaintiff's dispute.

12. Accordingly, Plaintiff brings claims against Defendant Experian for failing to follow reasonable procedures to assure the maximum possible accuracy of Plaintiffs credit reports, in violation of the FCRA, 15 U.S.C. § 1681e(b), and failing to conduct a reasonable reinvestigation to determine whether information Plaintiff disputed was inaccurate and record the current status of the disputed information, or delete the disputed information from Plaintiffs credit file, in violation of the FCRA, 15 U.S.C. § 1681i.

13. Plaintiff also brings a claim against Defendant CMC for failing to fully and properly reinvestigate Plaintiff's disputes and review all relevant information provided by Plaintiff and Defendant Experian, in violation of the FCRA, 15 U.S.C. § 1681s-2(b)(1).

14. As part of this action, Plaintiff seeks actual, statutory, and punitive damages, costs and attorneys' fees from Defendants for their willful and/or negligent

violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq*., as described herein.

## PARTIES

15.     Plaintiff is a natural person residing in Beverly Hills, Florida, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

16.     Defendant Experian is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) that maintains its principal place of business at 701 Experian Pkwy, Allen, Texas 75013, and is authorized to do business in the State of Florida, including within this District.

17.     Defendant CMC is a collection agency with its headquarters in Pittsburgh, Pennsylvania, and is authorized to do business in the State of Florida, including within this District.

18.     CMC is a credit grantor and "furnisher" of consumer information, as defined in 15 U.S.C. § 1681s-2(b).

19.     CMC regularly collects or attempts to collect debts owed or due or asserted to be owed or due another, and is therefore a "debt collector" within the meaning of the FDCPA, as defined in 15 U.S.C. § 1692a(6). CMC regularly uses the telephone and mail to engage in the business of collecting debts and/or alleged debts from consumers in several states, including in this district.

## JURISDICTION AND VENUE

20.    Jurisdiction of this Court arises under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p .

21.    Venue is proper in this District under 28 U.S.C. § 1391(b).

## FACTS

### Plaintiff Enters into Settlement Agreement with Defendant CMC in October 2025

22.    On or about October 1, 2025, Plaintiff received a written settlement offer from CMC concerning a collection account arising from a debt owed to an original creditor, Hernando County Emergency Physicians (the "CMC Account").

23.    Although the account reflected a balance of $1,067, CMC offered to accept a reduced payment of $500 as full satisfaction of the debt.

24.    The settlement offer further indicated that, upon receipt of the settlement payment, CMC would submit a request for deletion of the account from Defendant Experian, and non-parties Equifax and TransUnion.

Concerning our recent conversation, Credit Management Company has received authorization to extend the following outlined settlement on the above account. CASCADE CAPITAL FUNDING LLC has authorized Credit Management Company to offer you an opportunity to settle your account for $ 500.00

*Please be advised that once the payment is made, your account will be submitted for credit deletion from (Experian, Equifax, and TransUnion).

*Webb, Walter Lee v. Experian Information Solutions, Inc. et al*
Complaint

25.    On or about October 6, 2025, in reliance on these representations, Plaintiff paid the settlement payment of $500. The payment was reflected on Plaintiff's TD Bank account statement.

26.    Upon information and belief, upon making the $500 payment, the CMC Account was removed from Plaintiff's credit reports.

### Defendant Experian Reports the CMC Account in April 2026

27.    Plaintiff reasonably believed that the CMC Account had been fully resolved and that CMC would honor its representation to request deletion of the account from Plaintiff's credit reports.

28.    Thereafter, in or around April 2026, Plaintiff discovered the CMC Account had been reinserted into his credit report by Defendant Experian reflecting a status update in February 2026.

29.    Plaintiff further noticed that following the reinsertion of the CMC Account his credit score as reported by Defendant Experian had dropped from around 750 to around 590.

30.    Plaintiff was distressed to find that the account had been reinserted and the harm it had caused to his credit, despite his full compliance with the settlement agreement and payment of the agreed settlement amount.

31.    Plaintiff was further confused why the CMC Account would have been reinserted nearly a full four months after he satisfied it.

**Plaintiff Disputes the Inaccurate Reporting in April 2026**

32.    On or about April 21, 2026, Plaintiff made several phone calls to Defendants in an attempt to dispute the inaccurate reporting.

33.    Despite his best efforts, Plaintiff was unable to get a representative of Defendant Experian on the phone in order to dispute the CMC Account.

34.    On or about April 21, 2026, Plaintiff contacted CMC to inquire about the reinsertion of the collection account on his credit report.

35.    During that communication, a CMC representative informed Plaintiff that the October 1, 2025, payment had been refunded and that this purported refund was the reason the account was reinserted and continued to be reported.

36.    The representative's assertion that the payment was refunded on October 1, 2025, is inconsistent with the fact that Plaintiff did not make the settlement payment until October 6, 2025.

37.    Plaintiff was further advised by the CMC representative that the funds had been returned to the same TD Bank account from which Plaintiff's payment was made.

38.    Thereafter, Plaintiff reviewed his TD Bank account statements and found no record of any refund or credit from CMC in a time period following the October 2025 payment.

39.     On or about April 22, 2026, extremely distressed at the inaccurate reporting, Plaintiff submitted a written dispute via certified mail to Defendant Experian regarding the reinsertion of the CMC account despite his valid settlement payment and requested that Experian remove the disputed account.

40.     Plaintiff attached a copy of his driver's license, proof of address, the settlement letter from CMC, and his bank statement with TD Bank in support of his dispute.

### Defendant Experian's Unreasonable Dispute Reinvestigation

41.     Defendant Experian received Plaintiff's April 2026 dispute.

42.     Upon information and belief, Experian sent Defendant CMC an Automated Credit Dispute Verification ("ACDV") pursuant to Plaintiff's April 2026 dispute.

43.     On or about May 11, 2026, Experian issued dispute results to Plaintiff wherein it verified as accurate the disputed information and updated information unrelated to his dispute.

44.     Upon information and belief, Defendant Experian failed to adequately review all of the information provided to it by Plaintiff in support of Plaintiff's dispute.

45.     Upon information and belief, Defendant Experian failed to conduct a reasonable reinvestigation of Plaintiff's April 2026 dispute.

46.    Thereafter, Defendant Experian failed to remove the CMC Account appearing in Plaintiff's credit file.

47.    Experian failed to conduct a reasonable reinvestigation of Plaintiff's dispute tendered April 2026, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

**Defendant CMC's Unreasonable Dispute Reinvestigation**

48.    Upon information and belief, in or about April 2026, Defendant CMC received Defendant Experian's ACDV and failed to conduct a reasonable investigation with respect to the information disputed by Plaintiff.

49.    Upon information and belief, Defendant CMC failed to review all relevant information provided by Defendant Experian regarding Plaintiff's dispute tendered in or about April 2026.

50.    Upon information and belief, in or about April 2026, Defendant CMC verified the disputed information as accurate to Defendant Experian.

51.    Defendant CMC violated 15 U.S.C. § 1681s-2b by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to modify, delete, or permanently block the disputed information that was inaccurate, incomplete or unverifiable.

*Webb, Walter Lee v. Experian Information Solutions, Inc. et al*
Complaint

**Defendants' Method for Considering Consumer Credit Report Disputes**

52.     The credit industry has constructed a method of numeric-alpha codes for considering consumer credit report disputes. See 15 U.S.C. § 1681i(a)(5)(D).

53.     The credit bureaus, Defendant Experian, and non-parties Equifax, Trans Union, and Innovis, have thus created the Online Solution for Complete and Accurate Reporting, or e-OSCAR, as the credit industries' standard of performance. e-OSCAR allows the credit bureaus to create and data furnishers to respond to disputes initiated by consumers by routing credit reporting agency-created prompts for automated consumer dispute verifications to the appropriate data furnishers. e-OSCAR utilizes a numeric-alpha language specific to the credit reporting industry.

54.     That lexicon or unique language is commonly referred to in the credit reporting industry as "Metro 2 Format" or "Metro 2."

55.     It is also known industry wide as the CDIA's "Credit Reporting Resource Guide."

56.     Metro 2 is driven by numeric codes that translate into specific alpha representations about consumers' creditworthiness and character that will ultimately appear on credit reports issued to third parties who make credit, insurance, rental, and employment decisions regarding consumers.

57.     Metro 2 codes are used on an industry wide form known within the credit industry as an Automated Consumer Dispute Verification ("ACDV") electronic form.

58.     The ACDVs have many fields in their body for use in effecting thorough and complete communications between data furnishers and the credit reporting agencies.

59.     These ACDV "fields" have various titles for the many substantive areas into which the Metro 2 codes can be entered.

60.     Upon receiving a dispute from a consumer, the credit bureaus have an automated system that prepares ACDVs that are sent to each of the data furnishers that are reporting the credit accounts disputed by a consumer.

61.     The data furnishers, like Defendant CMC, then have an obligation under the FCRA to conduct a reasonable reinvestigation with respect to the disputed credit account and review all relevant information provided by the consumer with the dispute to determine whether the disputed credit account information is accurate and/or belongs to the disputing consumer. See 15 U.S.C. § 1681s-2(b).

62.     Once the data furnisher completes its reinvestigation, it will code the ACDV accordingly, representing either that the disputed account was verified as accurate and belonging to the disputing consumer, updating information related to

the account, or deleting the account entirely, and return the ACDV to the respective credit bureau(s) via e-OSCAR.

**Plaintiff Applies for Credit with Wells Fargo Bank in May 2026**

63.    On or about May 30, 2026, Plaintiff applied for credit with non-party Wells Fargo Bank ("Wells Fargo").

64.    Specifically, Plaintiff applied for a Home Equity Line of Credit ("HELOC") with Wells Fargo.

65.    Plaintiff hoped to be approved for the HELOC in order finance needed renovations to his home, including repairs to a garage affected by mold.

66.    Upon information and belief, Wells Fargo obtained a copy of Plaintiff's Experian credit report while processing his credit application.

67.    Upon information and belief, Experian reported inaccurate information, namely the CMC Account and Plaintiff's resulting decreased credit score, in Plaintiff's credit report to Wells Fargo.

68.    As a result of Defendant Experian's inaccurate reporting, Wells Fargo notified Plaintiff that he did not qualify for the HELOC he had applied for.

69.    By reporting the CMC Account in a credit file presumably about Plaintiff, despite the fact that the CMC Account was paid, closed, and settled, Defendant Experian failed to follow reasonable procedures to assure the maximum possible accuracy of the information contained within Plaintiff's credit files and

consumer reports, in violation of 15 U.S.C. § 1681e(b).

**Plaintiff Applies for Credit with American Express in June 2026**

70. Still seeking credit, Plaintiff tried searching for other opportunities.

71. To that end, on or about June 18, 2026, Plaintiff submitted a credit application with non-party American Express ("AMEX").

72. AMEX obtained a copy of Plaintiff's Experian credit report while processing his credit application.

73. Upon information and belief, Experian reported inaccurate information, namely the CMC Account and Plaintiff's resulting decreased credit score, in Plaintiff's credit report to AMEX.

74. As a result of Defendant Experian's inaccurate reporting, AMEX denied Plaintiff's credit application.

75. AMEX Explained that among the reasons for Plaintiff's credit denial was his FICO Score as obtained from Defendant Experian.

76. Upon information and belief, the reporting of the inaccurate CMC Account and Plaintiff's inaccurately decreased credit score were the reason for the credit denial.

77. By reporting the CMC Account in a credit file presumably about Plaintiff, despite the fact that the CMC Account was paid, closed, and settled, Defendant Experian failed to follow reasonable procedures to assure the maximum

possible accuracy of the information contained within Plaintiff's credit files and consumer reports, in violation of 15 U.S.C. § 1681e(b).

### Defendant CMC's FDCPA Violations

78. At all relevant times, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1692a(3), in that he is a natural person allegedly obligated to pay a debt arising from personal, family, or household purposes.

79. The alleged $1,067 obligation to Defendant arose from debts entered into for personal purposes and therefore constitutes a "debt" within the meaning of 15 U.S.C. § 1692a(5).

80. Upon information and belief, the Defendant CMC is a "debt collector" as defined by 15 U.S.C. § 1692a(6), in that it regularly collects or attempts to collect, directly or indirectly, debts owed or asserted to be owed to another, and regularly uses the mails and instrumentalities of interstate commerce in doing so. Defendant CMC identify themselves as collection agencies and engaged in collection activities with respect to the CMC Account and their respective obligations.

81. In connection with its collection activities, Defendant CMC represented that Plaintiff was legally obligated to pay $1,067.

82. These representations were false. As alleged above, the CMC Account had been paid, settled, and closed, and should no longer have been reported in Plaintiff's credit report.

83.     Defendant CMC's false representation that Plaintiff owed any balance on the CMC Account misrepresented the character, amount, and legal status of the alleged obligation. By characterizing a paid, settled, and closed debt as open and past, the Defendant CMC violated 15 U.S.C. § 1692e(2)(A).

84.     Defendant CMC further violated 15 U.S.C. § 1692e(8) by communicating credit information that it knew or should have known was false. Defendant CMC caused and/or maintained derogatory credit reporting reflecting that Plaintiff owed a collection debt, and then continued to certify or verify that reporting after receiving notice of Plaintiff's disputes and documentation demonstration that the CMC Account was not a valid debt owed by Plaintiff.

85.     Defendant CMC also violated 15 U.S.C. § 1692e(10) by using false representations and deceptive means in connection with debt collection. Specifically, the Defendant CMC's initial reporting of the CMC Account on Plaintiff's credit reports and verification and certification of the alleged obligation—despite the underlying account information establishing that Plaintiff had paid, closed, and settled the account—functioned to pressure payment and induce compliance by portraying Plaintiff as delinquent on a legitimate collection account, when  Defendant CMC lacked a truthful basis to do so.

86.     Finally, Defendant CMC violated 15 U.S.C. § 1692f(1) by attempting to collect an amount not expressly authorized by the agreement

creating the debt or permitted by law. Defendant CMC treated the CMC Account as collectible from Plaintiff despite the fact the CMC Account was paid, closed, and settled; therefore, any attempt to collect, demand, or maintain a collection balance in that amount constituted an unlawful effort to collect an amount not owed.

87. Defendant CMC's conduct, including its continued derogatory furnishing and verification of the alleged debt after notice of dispute, was undertaken in connection with the collection of a consumer debt and caused Plaintiff harm as described herein.

88. Defendant CMC's certification of the CMC Account, despite notice that Plaintiff disputed the debt and provided information establishing that no such debt existed, resulted in the continued erroneous and derogatory reporting of the account in Plaintiff's consumer files and reports.

89. Through these actions, the Defendant CMC made false representations concerning the character, amount, and legal status of the alleged debt, communicated credit information which it knew or should have known was false, employed deceptive means in connection with the collection of a debt, and attempted to collect an amount not authorized by agreement or permitted by law.

90. Defendant CMC's conduct was undertaken in connection with the collection of a consumer debt and caused harm to Plaintiff as described herein.

91. In addition to the foregoing, Defendant CMC further violated the

*Webb, Walter Lee v. Experian Information Solutions, Inc. et al*
Complaint

above-referenced provisions of the FDCPA and FCRA by failing to reasonably investigate Plaintiff's disputes after receiving notice from the Defendant Experian, failing to review all dispute materials and supporting documentation provided in connection with those disputes, failing to cease furnishing the inaccurate collection account, and failing to correct the false reporting, all in violation of 15 U.S.C. 1681s-2(b)(1)(A)-(E). In each instance in which Defendant CMC received notice of Plaintiff's dispute and nevertheless verified, certified, or continued reporting the CMC Account as owed by Plaintiff, Defendant CMC perpetuated a material inaccuracy and disseminated a false communication concerning the character, amount, and legal status of the alleged debt. Such an unreasonable investigation and false certification—despite the true state of affairs that the CMC Account had been paid, closed, and settled—constitutes a false representation and deceptive communication within the meaning of 15 U.S.C. §§ 1692e(2)(A), 1692e(8), 1692e(10), and an attempt to collect an amount not authorized by agreement or permitted by law under § 1692f(1).

## Plaintiff's Damages

92.   Plaintiff reasonably believes that Defendant CMC continued to furnish data to Experian inaccurately suggesting that Plaintiff was still responsible for the collection account with a balance of $1,067 owed to Defendant CMC.

93. Plaintiff reasonably believes that Defendant Experian continued to publish that Plaintiff was responsible for the collection account with a balance of $1,067 owed to Defendant CMC.

94. As a result of the reinsertion of the CMC Account, and despite Plaintiff's settlement payment with Defendant CMC, the Defendants made it practically impossible for Plaintiff to continue to obtain credit.

95. Upon discovering that the CMC Account had been reinserted despite his prior settlement and payment of the debt, Plaintiff became concerned about the effect the inaccurate reporting would have on his ability to obtain favorable credit.

96. Plaintiff spent time and effort attempting to investigate and resolve the inaccurate reporting, including reviewing credit reports, gathering documentation, and contacting the parties responsible for the reporting.

97. The continued reporting of the account caused Plaintiff significant stress and frustration and led to difficulty sleeping and concentrating at work. Plaintiff also experienced ongoing concern regarding the impact of the inaccurate reporting on his financial stability and future access to credit.

98. Plaintiff had been working hard to rebuild his credit in order to receive financing to start his own business, and the continued violative conduct of Defendants has made it impossible for him to do so.

99. At all times pertinent hereto, Defendants were acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

100. At all times pertinent hereto, the conduct of Defendants, as well as that of their respective agents, servants, and/or employees, was intentional, willful, reckless, grossly negligent and in utter disregard for federal law and the rights of Plaintiff herein.

101. As a standard practice, Defendant Experian does not conduct independent investigations in response to consumer disputes. Instead, they merely parrot the response of the credit furnisher despite numerous court decisions admonishing this practice. *See Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997); *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1230-31 (D.N.M. 2006); *Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

102. Defendant Experian is aware of the shortcomings of their procedures and intentionally choose not to comply with the FCRA to lower their costs. Accordingly, Defendant Experian's FCRA violations are willful.

103. As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damages including but not limited to, damage by loss of credit; loss of

ability to purchase and benefit from his good credit rating; detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, loss of sleep, humiliation, and embarrassment of credit denials.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy
### (Against Defendant Experian)

104.   Plaintiff repeats and realleges the foregoing allegations as if set forth in full herein.

105.   The FCRA imposes a duty on consumer reporting agencies to devise and implement procedures to ensure the "maximum possible accuracy" of consumer reports, as follows:

> Whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure ***maximum possible accuracy*** of the information concerning the individual about whom the report relates.

15 U.S.C. §1681e(b) (emphasis added).

106.   On at least one occasion, Defendant Experian prepared patently false consumer reports concerning Plaintiff.

107.    Defendant Experian reported inaccurate information reflecting that Plaintiff was delinquent on paying a debt, thereby misrepresenting Plaintiff, and ultimately, Plaintiff's creditworthiness.

108.    Defendant Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files they published and maintained concerning Plaintiff.

109.    As a result of Defendant Experian's conduct, action, and inaction, Plaintiff suffered damages including but not limited to, damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, loss of sleep, humiliation, and embarrassment of credit denials.

110.    Defendant Experian's conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

111.    Plaintiff is entitled to recover attorneys' fees and costs from Defendant Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT II**
**15 U.S.C. § 1681i**
**Failure to Perform a Reasonable Reinvestigation**
**(Against Defendant Experian)**

112.    Plaintiff repeats and realleges the foregoing allegations as if set forth in full herein.

113.    The FCRA mandates that Defendant Experian conduct a reasonable reinvestigation of the accuracy of information "[i]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. *See* 15 U.S.C. § 1681i(a)(1). The FCRA imposes a 30-day time limit for the completion of such an investigation. *Id*.

114.    The FCRA provides that if Defendant Experian conducts its reinvestigation of disputed information and confirms that the information is, in fact, inaccurate or it is unable to otherwise verify the accuracy of the disputed information, it is required to delete the item of information from the consumer's file. *See* 15 U.S.C. § 1681i(a)(5)(A).

115.    Plaintiff initiated a dispute with Defendant Experian and disputed inaccurate information reporting in his credit file and requested that Defendant Experian correct and/or delete the inaccurate, misleading, and highly damaging

24/31

information belonging to an unrelated consumer.

116.    Defendant Experian conducted virtually no investigation of Plaintiff's dispute, or such investigation was so shoddy as to allow patently false and highly damaging information to remain in Plaintiff's credit file.

117.    Plaintiff expended resources in the form of time, money, and effort to dispute the inaccurate information with Defendant Experian, to no avail.

118.    Defendant Experian violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which it received notice of Plaintiff's dispute; and by failing to maintain reasonable procedures with which to filter and verify information in Plaintiff's credit files

119.    As a result of Defendant Experian's conduct, action, and inaction, Plaintiff suffered damages including but not limited to, damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, loss of sleep, humiliation, and embarrassment of credit denials.

*Webb, Walter Lee v. Experian Information Solutions, Inc. et al*
Complaint

120. Defendant Experian's conduct, actions, and inactions were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

121. Plaintiff is entitled to recover attorneys' fees and costs from Defendant Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT III
### 15 U.S.C. § 1681s-2(b)
### Failure to Conduct an Investigation and Correct the Reporting
### (Against Defendant CMC)

122. Plaintiff repeats and realleges the foregoing allegations as if set forth in full herein.

123. Defendant CMC furnished the inaccurate information relating to Plaintiff to the national credit bureaus, including but not limited to Defendant Experian.

124. Upon receipt of Plaintiff's dispute from Defendant Experian, Defendant CMC refused to remove inaccurate information – namely, the CMC Account.

125. Defendant CMC violated 15 U.S.C. § 1681s-2(b) by failing to investigate Plaintiff's dispute, or otherwise by failing to fully and properly investigate Plaintiff's dispute(s), including but not limited to failing to review all

relevant information regarding the same; by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the inaccurate information relating to Plaintiff to the national credit bureaus, including but not limited to Defendant Experian; and, by failing to cease furnishing inaccurate information relating to Plaintiff to the national credit bureaus, including but not limited to Defendant Experian.

126.    As a result of Defendant CMC's conduct, action, and inaction, Plaintiff suffered damages including but not limited to, damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, loss of sleep, humiliation, and embarrassment of credit denials.

127.    Defendant CMC's conduct, action, and inaction were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

128.    Plaintiff is entitled to recover attorneys' fees and costs from Defendant CMC in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT IV
## 15 U.S.C. §§ 1692e(2), 1692e(8), and 1692e(10)
### False Reporting to Experian
### (Against Defendant CMC)

129.    Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

130.    Defendant CMC's foregoing actions and omissions were in furtherance of its attempts to collect a debt falsely alleged to be owed by Plaintiff.

131.    Defendant CMC's false reporting of the CMC Account debt on Plaintiff's Experian consumer reports was in furtherance of Defendant CMC's attempts to collect said debt.

132.    Defendant CMC's reporting of the CMC Account debt, falsely alleged to be owed by Plaintiff, to Experian as described herein, constituted "false, deceptive, or misleading representation or means in connection with the collection of [a] debt." 15 U.S.C. § 1692e.

133.    Defendant CMC's actions and omissions regarding investigations of Plaintiff's disputes of the CMC Account information on Plaintiff's Experian consumer report were in furtherance of Defendant CMC's attempts to collect a debt.

134. Defendant CMC's reiteration to Experian that the debt was valid and owed by Plaintiff, in response to Plaintiff's disputes, as described herein, constituted "false, deceptive, or misleading representation or means in connection with the collection of [a] debt." 15 U.S.C. § 1692e.

135. Defendant CMC's foregoing actions and omissions in connection with their efforts to collect the CMC Account debt violated numerous and multiple provisions of the FDCPA, including without limitation 15 U.S.C. §§ 1692e, 1692e(2), 1692e(8), and 1692e(10).

136. As a result of the Defendant CMC's violations of the FDCPA, Plaintiff suffered damages including but not limited to, damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, loss of sleep, humiliation, and embarrassment of credit denials. Plaintiff is therefore entitled to recover actual damages under 15 U.S.C. § 1692k.

137. Under 15 U.S.C. § 1692k, Plaintiff is also entitled to recover $1,000 in statutory damages, reasonable attorney's fees, and costs from the Defendant CMC.

## COUNT V
## 15 U.S.C. §§ 1692f(1)
## Collection of Any Debt Unauthorized by Explicit Law or Agreement
## (Against Defendant CMC)

138. Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

139. Defendant CMC further violated the FDCPA by using unfair or unconscionable means to collect a debt.

140. Defendant CMC's unfair and unconscionable means include, without limitation:

(a) Attempting to collect an alleged debt from Plaintiff, which had been paid, closed, and settled.

(b) Attempting to coerce, pressure, and/or deceive Plaintiff into paying money that he did not in fact owe.

141. Defendant CMC's debt collection actions and/or inactions were false, deceptive, or misleading representations or means used in connection with the collection of an alleged debt.

142. As a result of Defendant CMC's actions and/or inactions, Plaintiff suffered damages including but not limited to, damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying

to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, loss of sleep, humiliation, and embarrassment of credit denials. Plaintiff is therefore entitled to recover actual damages under 15 U.S.C. § 1692k.

143.   Under 15 U.S.C. § 1692k, Plaintiff is also entitled to recover $1,000 in statutory damages, reasonable attorney's fees, and costs from the Defendant CMC.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that the Court enter a judgment awarding Plaintiff actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs, and awarding Plaintiff such other and further relief as the Court may deem appropriate and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Respectfully Submitted this 16th day of July, 2026

> */s/ Max Warshaw*
> Max Warshaw, FL Bar # 1065527
> CONSUMER ATTORNEYS, PLLC
> 68-29 Main Street
> Flushing NY 11367
> T: (718) 301-6260
> F: (718) 247-8020
> E: mwarshaw@consumerattorneys.com
>
> *Attorneys for Plaintiff,*
> *Walter Lee Webb*

*Webb, Walter Lee v. Experian Information Solutions, Inc. et al*
Complaint